UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SUZANNE VALERIE, Personal Representative
for the Estate of Anthony McManus,

    Plaintiff,

v.                                                    Case No. 2:07-cv-5
                                                      HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

**OPINION AND ORDER**

In April of this year, the Court conducted a settlement conference in this matter in an effort to resolve this case before the parties engaged in what the Court believed would be extensive discovery. Prior to that settlement conference, plaintiff requested that a copy of a videotape which was in defendants' possession be provided to the Court and to plaintiff's counsel. The parties entered into a stipulated protective order (Docket #188) which included a provision that the videotape taken of Anthony McManus prior to his death would be protected from disclosure. Plaintiff's counsel stipulated to the entry of this protective order, but indicated that a motion to set aside the protective order might be filed after counsel had an opportunity to review the videotape. This Court's efforts at reaching an early settlement in this case were unsuccessful. Thereafter, plaintiff filed a motion to dissolve the protective order (Docket #196). That motion has been fully briefed and is ready for a decision.

This case involves the death of 38-year-old Anthony McManus, who was housed at the Baraga Maximum Correctional Facility. According to the complaint, McManus died because defendants[1] made no effort to provide McManus with appropriate medical treatment. According to the complaint, McManus suffered from a psychiatric condition and, as a result of this condition, he suffered from metabolic abnormalities secondary to self-inflicted emaciation which was a result of his mental condition. In April of 2005, McManus, who was 5'6", weighed approximately 140 pounds. In July of 2005, McManus weighed 90 pounds, 50 pounds less than he had weighed in April of 2005. At the time of his death, McManus weighed 75 pounds. According to the complaint, the defendants were deliberately indifferent to McManus' condition and allowed an inmate suffering from severe mental illness to starve himself to death. The videotape at issue in this motion was taken shortly before the decedent's death. I have reviewed that videotape and find it disturbing, to say the least.

The parties agree that the issue before the Court is governed by Federal Rule of Civil Procedure 26(c)(1), which "grants broad discretion to trial judges in fashioning protective orders." *See York v. American Medical Systems, Inc.*, No. 97-4306, 1998 WL 863790, at 4 (S.D. Ohio Nov. 23, 1998) (a copy of which is attached). This Court is required to "balance the interests at issue and . . . compare the hardship on both parties if the motion is either granted or denied. . . . In making its decision, the court must consider the nature and magnitude of the hardship imposed on each party by the order." *Id.* Defendants maintain that there are "legitimate security concerns involved in terms of both the prisoner's resistance to certain security measures and the corrections officers' efforts to

---

[1] There are presently 42 defendants in this case, including guards, nurses, medical staff, and other prison officials.

overcome that resistance in order to accomplish the prisoner movement at hand." *See* Defendants Ansell, et al's Response in Opposition to Plaintiff's Motion to Dissolve Protective Order (Docket #213) at page 4. This argument by defendants is disingenuous, at best. This Court has received numerous videotapes of cell moves filed by counsel for the Michigan Department of Corrections or employees of the Michigan Department of Corrections in support of motions for summary judgment. To my knowledge, the Court has never been requested to issue a protective order in such cases. Furthermore, the fact that defendants state that there are legitimate security concerns does not make it true. In my opinion, defendants have failed to establish that there are legitimate security concerns justifying a protective order.

What appears to be the real reason defendants seek to prevent disclosure of the videotape is their belief that plaintiff's counsel "would be free to disperse the videotape to the media, which would result in the case being tried in the media rather than the courtroom." *See* Defendant Frontera's Brief Opposing Plaintiff's Motion to Dissolve Protective Order (Docket #205) at page 2. This argument has merit. I have reviewed the videotape and it is very disturbing. It is quite possible that the release of the videotape could bias future jurors before the case goes to trial. It is certainly possible, if not probable, that should the videotape be released, it would receive extensive coverage in the Upper Peninsula of Michigan. This could significantly taint the jury pool and make it very difficult to ensure that an unbiased jury was seated in this case. I recognize that the public has a First Amendment right to information regarding alleged misconduct by government officials. However, this Court's obligation, first and foremost, is to ensure the integrity of the judicial process. Balancing the competing interests, it is my conclusion that the Court should not dissolve the protective order at this time. Accordingly,

IT IS ORDERED that plaintiff's Motion to Dissolve Protective Order (Docket #196) is DENIED.

IT IS SO ORDERED.

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: September 23, 2008