UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SUZANNE VALARIE, as Personal Representative
for the Estate of ANTHONY MCMANUS
Deceased,

    Plaintiff,

v.                                                  Case No. 2:07-cv-5
                                                          HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

**MEMORANDUM AND ORDER**

Pursuant to 28 U.S.C. § 636(b)(1)(C) Defendants object to the Report and Recommendation issued by the United States Magistrate Judge on September 23, 2008. [Court Doc. No. 341]. The court has reviewed the Report and Recommendation, as well as the objections from the Defendants. [Court Doc. Nos. 350, 354]. In accordance with 28 U.S.C. § 636(b)(1), the court has performed *de novo* consideration of the Report and Recommendation and has determined the objections to be without merit.

In their objections, Defendants contend that the magistrate judge erred in denying Defendants' motion to dismiss Plaintiff's claim for punitive damages [Court Doc. No. 219]. Defendants contend that Plaintiff's remedies are confined to the remedies provided by Michigan's Wrongful Death Statute, Mich. Comp. Laws §§ 600.2921 *et seq*. They argue that Michigan law applies pursuant to 42 U.S.C. § 1988 and that Michigan law does not provide for punitive damages. However, this court concludes that the weight of the law is to the contrary and that Plaintiff may obtain punitive damages for her claims pursuant to 42 U.S.C. § 1983 ("Section

1983"), despite Michigan's lack of a provision for punitive damages in its wrongful death statute.

Defendants further argue that the recent opinion of *Exxon Shipping Co. v. Baker*, __ U.S. __, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) applies to limit Plaintiff's entitlement of any punitive damages to a ratio of 1:1 with any potential compensatory damages. The court has further reviewed the *Exxon Shipping Co.* case, as well as decisions following that case, to determine whether the Supreme Court ruling applies to Section 1983 cases. This court concludes that the *Exxon* punitive damages ratio does not apply here.

The court's analysis regarding the Report and Recommendation follows.

## I.     Background

It is not necessary at this stage of the proceedings to delve deeply into the facts of this case. The case involves the alleged actions of the Defendants[1] as they pertain to the death of Anthony McManus, a prisoner who was housed at the Baraga Maximum Correctional Facility at the time of his death. As stated by the magistrate judge in the Report and Recommendation, the complaint alleges that "defendants were deliberately indifferent to McManus' severe mental condition and allowed him to starve himself to death."

Defendants contend initially that Plaintiff's "punitive damage claim was extinguished upon the death of Anthony McManus pursuant to the operation of Michigan's survival and wrongful death statutes." Mich. Comp. Laws §§ 600.2921-2922. Defendants further argue that even if Plaintiff is entitled to punitive damages, the ratio of those damages to the Plaintiff's

---

[1] There are 42 defendants in this case, including guards, nurses, medical staff, and other prison officials.

economic damages should be limited to a 1:1 ratio, based on the *Exxon Shipping Co.* case. The court will address these two arguments in turn.

    II.    Analysis

    A.    **The Availability of Punitive Damages for Plaintiff's Section 1983 Claim**

Section 1983 does not contain a provision for damages. The Act states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. However, both parties agree that punitive damages are available pursuant to Section 1983. *See Smith v. Wade*, 461 U.S. 30, 35-36, 103 S.Ct. 1625, 1629 (1983). Deterrence of future egregious conduct is a "primary purpose" of Section 1983, as well as of punitive damages. *Id.* at 49, 103 S.Ct. at 1636. In *Smith* the Supreme Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56, 103 S.Ct. at 1640.

However, the Sixth Circuit has made clear that:

> a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.

*Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted). The Supreme Court further reminds us that "[t]he purpose of punitive damages is to punish the defendant for

his willful or malicious conduct and to deter others from similar behavior." *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n.9, 106 S.Ct. 2537 (1986).

Section 1983 actions are *personal* to the injured party. *See Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984). The Supreme Court has thus "mandated that determination of the applicable survivorship rule for actions arising pursuant to 42 U.S.C. § 1983, [is] governed by 42 U.S.C. § 1988." *Id.* (citing *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991 (1978)). 42 U.S.C. § 1988 provides that:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of persons in the United States and their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. . . .

42 U.S.C. § 1988(a). Pursuant to Section 1988, the law of the forum state "provides the principal reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.'" *Robertson*, 436 U.S. at 590, 98 S.Ct. at 1995.

In *Robertson* the Supreme Court addressed the survival of a Section 1983 action when the plaintiff died during the course of the litigation. *Id.* The Court examined whether the district court should have adopted a Louisiana survivorship statute which would cause the action to abate or whether it should have created a federal common law ruling that allowed the action to survive. *Id.* at 585, 98 S.Ct. at 1992. The Louisiana statute at issue only allowed actions to survive if

brought by a spouse, children, parents, or siblings, and not if brought by an estate representative. *Id.* at 591. The Court held that the Louisiana state abatement law applied and that the plaintiff's claim was extinguished with his death. *Id.* at 594, 98 S.Ct. 1997. In contrast to the action at hand, the suit was not one in which the plaintiff's death was caused by the alleged deprivation of rights. *Id.* The Supreme Court further cautioned that "[o]ur holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983." *Id.*

In *Jaco v. Bloechle* the Sixth Circuit distinguished the situation in *Robertson*. 739 F.2d 239 (6th Cir. 1984). In *Jaco* the plaintiff's son had been shot and immediately killed by police officers following an incident in which he was allegedly firing weapons outside of his house. *Id.* at 240. The plaintiff brought a Section 1983 claim alleging a violation of her son's civil rights. Because her son died instantaneously, his civil rights suit did not survive pursuant to the Ohio survival statute. *Id.* at 242. The Sixth Circuit noted that there are two policies underlying Section 1983 as found by the Supreme Court in *Robertson*: "Specifically, courts are instructed to gauge the impact of abatement upon the 'goal of compensating those injured', and '§ 1983's role in preventing official illegality'." *Id.* at 244 (quoting *Robertson*, 436 U.S. at 592, 98 S.Ct. at 1996). In holding that the plaintiff's Section 1983 claim did not abate due to the instantaneous death of her son, the court noted:

> Under Ohio's survival statute, this decedent's civil rights cause of action *would* have survived if his death had not been instantaneous; in light of the sweeping language of the enactment, to suggest that the Congress had intended that a civil

> rights infringement be cognizable only when the victim encounters pain and suffering before his demise, is absurd. The § 1983 objective of protecting individual civil liberties by providing compensation to the victim for an illegal deprivation of constitutional entitlements by state officers cannot be advanced, and is only undermined, by deferring to a state law which decrees abatement under circumstances where, as here, asserted constitutional infringements resulting from action taken under color of law caused instant death. Surely, § 1983's further purpose to discourage official constitutional infringement would be threatened if [plaintiff] were not permitted to champion her dead son's civil rights. Ohio's survivorship law *is* then hostile to "the Constitution and laws of the United States." To afford effect to the expressions and directions of the Supreme Court in *Robertson v. Wegmann*, where, as here, the survival statutes of the forum state are hostile to promoting deterrence, protection and vindication against § 1983 civil rights infringements perpetrated under color of law, the federal court must implement the congressional intent by allowing survival.

*Jaco*, 739 F.2d at 244-45.

Defendants rely heavily on the decision in *Frontier Ins. Co. v. Blaty* for their argument that Michigan law provides the remedy for Plaintiff's Section 1983 claim, pursuant to 42 U.S.C. § 1988, and that Michigan law does not provide for punitive damages. 454 F.3d 590 (6th Cir. 2006). In *Blaty* the estate of a thirteen-month-old who died while in the care of a foster home brought a Section 1983 claim against the foster home. *Id.* at 592-93. The court reviewed whether the child's estate was entitled to damages based on her loss of enjoyment of life under Section 1983. *Id.* at 598. The court reviewed the damages available under Michigan's wrongful death statute and concluded that the list did not include loss of enjoyment of life. *Id.* at 598-99. Michigan's wrongful death statute provides:

> the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

Mich. Comp. Laws § 600.2922(6). The court held that "federal law does not require, in a section 1983 action, recovery of hedonic damages stemming from a person's death." 454 F.3d at 600. It determined that Michigan law provided for loss of enjoyment of life damages experienced by the decedent prior to his or her death, but not loss of enjoyment damages to the estate following death. *Id.* In holding that the estate had no claim for loss of enjoyment the court stated:

> The only basis to supplement the state law damages scheme is a determination that it is inconsistent with the purposes of federal law, and we see no basis for making such a determination here. The typical recovery in Michigan wrongful death suits for damages such as the ones being sought by [the estate] in this case is loss of society and companionship damages from the perspective of those who survive the deceased. Because of the unique circumstances of [the toddler's] death, the district court held these damages amounted to zero. While this result does not seem wholly fair to [the toddler's] estate, it is the result dictated by current Michigan law. At the same time, the outlier of facts that this case presents does not necessitate that federal law must trump the Michigan law as being inconsistent with the Constitution of the laws of the United States.

*Blaty*, 454 F.3d at 603-04. Although the Sixth Circuit in *Blaty* discussed whether Michigan law was inconsistent with the goals of Section 1983 and the Constitution and laws of the United States, punitive damages were not at issue in that case. Further, it determined that the compensatory damages available under Michigan law in the "outlier of facts that this case presents" were sufficient to provide the deterrence needed to fulfill one of the two policy goals of Section 1983 cases. The facts of the instant action stand in marked contrast to the facts in *Blaty*. Further, it is not clear that compensatory damages alone will suffice to fulfill the goal of deterrence for Plaintiff's Section 1983 claim.

The decision in *Gordon v. Norman* supports the Plaintiff's position. 788 F.2d 1194 (6th Cir. 1986). In that case the Sixth Circuit addressed the availability of punitive damages in a Section 1983 case in which the plaintiff claimed that police used excessive force in his arrest and

conspired to bring false charges against him. The court stated in unequivocal language:

> Federal standards govern the determination of damages under the civil rights statutes. Thus, punitive damages may be awarded under § 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred. Defendants' assertion that the award of punitive damages should be limited by application of Tennessee law is without merit.

788 F.2d at 1199.

In *Janda v. City of Detroit*, the Michigan appeals court addressed the availability of punitive damages for an Section 1983 claim alleging police brutality. The court opined in dicta about the availability of punitive damages under Section 1983 where Michigan law precluded an award of punitive damages. 437 N.W.2d 326, 331 (Mich. Ct. App. 1989). Relying on *Gordon* the Michigan appeals court noted that "punitive damages may be awarded under 42 U.S.C. § 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred." *Id.*

As the magistrate judge in this action found, this court also finds that the facts of *Murphy v. Gilman* are highly similar to the facts of this case. 551 F.Supp.2d 677 (W.D. Mich. 2008). In that case, the court denied the defendants' motion for judgment as a matter of law, due to the severity of their actions "which caused the death of [the decedent] over an almost five day period with less than adequate food and periods of no water in overwhelming heat in a prison cell." *Id.* at 679. The court determined that the evidence of the acts of the defendants supported the judgment, as well as the punitive damages. *Id.* The court acknowledged that neither punitive damages nor exemplary damages are available for claims brought solely under Michigan law, Mich. Comp. Laws § 600.2922. *Id.* at 684. However, relying on *Gordon* and *Janda* the court directly addressed the Defendants' argument in this action based on *Blaty*:

> Defendants' reliance on *Frontier Ins. Co. v. Blaty* . . . is misplaced. *Blaty* addressed whether loss of enjoyment of life damages were available in an action for the wrongful death of an infant who died under foster care, but did not address punitive damages. It applied Michigan law because "if section 1983 is deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," the court must look to common law.
>
> However, as observed by *Gordon*, *supra*, § 1983 permits punitive damages, so there is no deficiency to be addressed. Furthermore, Michigan case law reflects the availability of punitive damages under § 1983 claims.
>
> Here the jury found [defendants] liable for deliberate indifference. Whether punitive damages applied was within the purview of the fact-finder, based on wilful or intentional violations of [the decedent's] civil rights, or a reckless or callous indifference thereto. Based on the evidence in this case, the jury had evidence before it that would permit such a conclusion. Punitive damages were correctly awarded, pursuant to §§ 1983 and 1988 and *Gordon*. The absence of a provision for them under the Michigan wrongful death statute is irrelevant.

*Id.* at 684-85 (citing *Gordon*, 788 F.2d at 1199; *Blaty*, 454 F.3d 590; *Janda*, 437 N.W. 326). The court found that the punitive damages award of $2.5 million dollars, a ratio of 10:1 over the compensatory damages, was not constitutionally excessive. *Murphy*, 551 F.Supp.2d at 685-86. This court agrees with the court in *Murphy* that, based on the facts of this case, an alleged death by starvation at the hands of defendants, punitive damages are available to the Plaintiff even though these damages are not available under Michigan law.

The Second Circuit addressed the precise issue at hand in a case in which the plaintiff mother alleged that the decedent had suffered death at the hands of police officers who were attempting to arrest him. *McFadden v. Sanchez*, 710 F.2d 907 (2d Cir. 1983). The Second Circuit addressed the argument that a provision of New York law, repealed since the decedent's death, prevented the survival of a claim for punitive damages after the death of the plaintiff's son. *Id.* at 910. The court addressed the same argument the Defendants are making here:

> In *Robertson v. Wegmann*, . . . the Supreme Court, applying 42 U.S.C. § 1988, permitted a state survival statute to limit the class of relatives entitled to bring an action under section 1983 on behalf of a decedent. However, the Court carefully noted that it was not deciding whether state survival statutes could totally preclude section 1983 claims on behalf of a decedent and pointedly distinguished a section 1983 claim for a deprivation of federally protected rights that caused the decedent's death. . . .
>
> Prior to *Robertson* and *Green* we had given effect to New York law to bar a claim for punitive damages in a section 1983 suit brought on behalf of a decedent in circumstances where the alleged denial of constitutional rights was unrelated to the death. Whether or not our ruling in *Duchesne* has been impaired by *Robertson* and *Green*, we have no doubt that limitations in a state survival statute have no application to a section 1983 suit brought to redress a denial of rights that caused the decedent's death. To whatever extent section 1988 makes state law applicable to section 1983 actions, it does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death. State law that would preclude a claim for punitive damages in a case like the present one is manifestly "inconsistent" with federal law within the meaning of section 1988.

*Id.* at 910-911 (citing *Robertson*, 436 U.S. 584; *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468 (1980); *Duchesne v. Sugarman*, 566 F.2d 817, 821 n.2 (2d Cir. 1977)) (other citations omitted).

In conclusion, this court finds that this case is highly similar to *Murphy v. Gilman*. Further, the court concludes that *Blaty* is distinguishable because punitive damages were not at issue in that case. It is undisputed that punitive damages are available in Section 1983 cases; therefore, the court determines that "the absence of a provision for them under the Michigan wrongful death statute is irrelevant." *Murphy*, 551 F.Supp.2d at 685. Based on this review of pertinent legal authority, the court concludes that the magistrate judge did not err in denying Defendants' motion to dismiss Plaintiff's claim for punitive damages.

    **B.**    **Permissible Ratio for Punitive Damage Award**

Defendants argue that even if this court concludes that Plaintiff is entitled to seek punitive

damages in her Section 1983 case, the ratio between the compensatory damages amount and any possible punitive damages amount should be 1:1 based on the recent Supreme Court decision in *Exxon Shipping Co.*, 128 S.Ct. 2605.  A close analysis of both the *Exxon* decision and some of the few reported and unreported decisions to follow the decision provide insight into why this court adopts the magistrate judge's decision that Plaintiff is not limited to a 1:1 ratio between compensatory damages and punitive damages in this case.

In *Exxon* the Supreme Court addressed whether a punitive damage award of $2.5 billion dollars should be reduced.  128 S.Ct. 2605.  As Justice Souter put it in the beginning of the opinion, the Court was addressing "three questions of *maritime* law."  *Id.* at 2611 (emphasis added).  One question the court addressed was whether the $2.5 billion punitive damage award was "greater than maritime law should allow in the circumstances."  *Id.*  The damages in the case stemmed from an oil supertanker, the Exxon Valdez, running aground on a reef off the Alaskan coast and spilling millions of gallons of oil into Prince William Sound.  *Id.*  The captain of the ship was a recovering alcoholic whom Exxon was aware had a drinking problem.  *Id.* at 2612.  The evidence at trial demonstrated that the captain left his post while the tanker was navigating a treacherous path across the Valdez Narrows and placed the tanker on autopilot, leaving an unlicensed officer to attempt a tricky and narrow turn near the reef.  *Id.*  Following the spill, Exxon spent about $2.1 billion on cleanup efforts.  *Id.* at 2613.

In a separate class action lawsuit, the one at issue before the Supreme Court, a group of plaintiffs including commercial fishermen, Native Alaskans, and landowners brought suit against Exxon.  In that case the jury awarded the plaintiffs $507.5 million in compensatory damages and $5 billion in punitive damages against Exxon.  *Id.* at 2614, 2634.  The Ninth Circuit reduced the

punitive damage award to $2.5 billion. *Id.* at 2614. The Supreme Court addressed whether the award of punitive damages was excessive "as a matter of maritime common law." *Id.* at 2614.

The Supreme Court engaged in an extensive analysis of the history and purpose of punitive damages, which are aimed at "retribution" and "deterring harmful conduct." 128 S.Ct. at 2621. As the Court noted, the "prevailing rule in American courts also limits punitive damages to cases" of "'enormity'" involving "'outrageous'" conduct owing to "'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Id.* at 2621 (quotations omitted). The Court noted that Exxon's conduct in the case had been deemed to be reckless, which contrasted with "intentional or malicious" conduct. *Id.* at 2632, n.23. It further noted that "[r]egardless of culpability, however, heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect . . . or when the value of injury and the corresponding compensatory award are small (providing low incentives to sue). . . ." *Id.* at 2622. In reviewing the appropriateness of the award of punitive damages, the Supreme Court emphasized that it was not determining the outer limit allowed by constitutional due process:

> Although "we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula," we have determined that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process, "[w]hen compensatory damages, are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee," . . .
> Today's enquiry differs from the due process review because the case arises under federal maritime jurisdiction, and we are reviewing a jury award for conformity with maritime law, rather than the outer limit allowed by due process; we are examining the verdict in the exercise of federal maritime common law authority, which precedes and should obviate any application of the constitutional standard. .
> . . .
> Our review of punitive damages today, then, considers not their intersection with

>      the Constitution, but the desirability of regulating them as a common law remedy
>      for which responsibility lies with this Court as a source of judge-made law in the
>      absence of statute.

*Id.* at 2626-2627 (quoting *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)) (other citations omitted). The court noted further that "adopting an admiralty-law ratio is no less judicial than picking one as an outer limit of constitutionality for punitive awards." *Id.* at 2530 (citing *State Farm*, 538 U.S. at 425). It also contrasted the "particular type" of case it faced, one involving recklessness, from state law cases with higher ratio limits on punitive damages that involve "some of the most egregious conduct, including malicious behavior and dangerous activity carried on for the purpose of increasing a tortfeasor's financial gain. We confront, instead, a case of reckless action, profitless to the tortfeasor, resulting in substantial recovery for substantial injury." *Id.* at 2631-2632.

The Court held that "a 1:1 ratio, which is above the median award, is a fair upper limit in such maritime cases" and noted further that "[t]he provision of the [Clean Water Act] respecting daily fines confirms our judgment that anything greater would be excessive here and in cases of this type." *Id.* at 2633-2634. The Court's opinion distinguished the maritime based facts in the *Exxon* case, including its emphasis on the reckless behavior at issue, the substantial penalties already imposed under the Clean Water Act, and the compensatory damages of $500 million from other types of cases in which punitive damages are available. The limitations to the maritime situation in *Exxon* lead this court to the conclusion that punitive damages in a case such as this once, involving allegations of egregious violations of constitutional rights and malicious behavior resulting in prolonged starvation leading to death, are not restricted to a ratio of 1:1 with

respect to any potential compensatory damages. In *Exxon* the Supreme Court specifically noted that the case it was facing was different from a case in which the compensatory damages might be expected to be low, but the conduct was outrageous. The facts of this case represent such a situation.

Although few courts have had an opportunity to review this issue since the Supreme Court issued its decision in June of 2008, a handful of decisions demonstrates that other courts have also concluded that Section 1983 claims are not restricted to a punitive damages to compensatory damages ratio of 1:1. For example, in *Kunz v. DeFelice*, the Seventh Circuit addressed punitive damages in a Section 1983 case involving allegations of police brutality during an interrogation. 538 F.3d 667 (7th Cir. 2008). The plaintiff obtained jury verdicts of $10,000 in compensatory damages and a reduced punitive damage award of $90,000. *Id.* at 670. After reviewing the *Exxon* case and distinguishing it from a Section 1983 case, the court determined that "[t]here is thus good reason for us to look for guidance in the standards for excessiveness of punitive damages that courts have established in tort cases" and held that there was "no reversible error in the ratio between the compensatory and punitive damages." *Id.* at 679. *See also, Ellis v. La Vecchia*, 567 F.Supp.2d 601 (S.D.N.Y. 2008) (post-*Exxon* case denying motion to strike punitive damages in Section 1983 case where jury awarded $1 in compensatory damages and $2600 in punitive damages); *American Family Mut. Ins. Co. v. Miell*, 569 F.Supp.2d 841 (N.D. Iowa 2008) (post-*Exxon* case affirming punitive damages award of 1.85 times the amount of compensatory damages in action based on fraud); *Lewis v. Pugh*, No. 07-40662, 2008 WL 3842922 (5th Cir. Aug. 18, 2008) (post-*Exxon* decision affirming award of punitive damages for five times the amount of compensatory damages where plaintiff brought a

Section 1983 case alleging rape and assault by a police officer).

Based on the reasoning in these cases, as well as that given by the magistrate judge based on *Hayduk v. City of Johnstown*, __ F.Supp.2d ___, 2008 WL 2669477, *41 n.46 (W.D. Penn. June 30, 2008), this court concludes that Plaintiff is not limited by the strict 1:1 ratio between compensatory and punitive damages as outlined in the *Exxon* maritime law case.

THEREFORE, IT IS ORDERED that the Report and Recommendation of the Magistrate Judge is APPROVED and ADOPTED and incorporated into the opinion of the court and Defendants' motion to dismiss Plaintiff's claims for punitive damages [Court Doc. No. 219] is DENIED.

SO ORDERED.

Dated: November 17, 2008.

                                     */s/ R. Allan Edgar*
                                 R. ALLAN EDGAR
                         UNITED STATES DISTRICT JUDGE